UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FELIX GARCIA, PHILIP CALDAROLA,       :
ELEGGUA OSUN ELUFE, WAYNE             :
NORRIS, JAMES JAMESON, ELMER          :
ORTIZ, AMAURY BONILLA, ERCREY         :
GRANGIER, KEVIN WILLIAMS,             :
MALUMBA KAZIGO, BRANDON               :
HOLMES, ROLANDO CORONADO, PAUL        :
THOMPSON, and LAMONTE JOHNSON,        :
                    Plaintiffs,        :
                                       :        **OPINION AND ORDER**
v.                                     :
                                       :        13 CV 8196 (VB)
BRIAN FISCHER, PHILIP D. HEATH,       :
MICHAEL A. CAPRA, WILLIAM F.          :
KEYSER, JR., KEVIN WINSHIP, NOEL F.   :
MORRIS, EMIL MEJIA, ANTHONY M.        :
THERIAULT, VALERIE COLON, RICHARD     :
A. MOSS, SHELDON WELSH, CANDICE P.    :
SUMPTER, PETER MENDEZ, KEVIN M.       :
JACKSON, DANIEL HAUSRATH,             :
MARYANN GENOVESE, BARBARA             :
FURCO, DR. WILLIAMS, and NURSES DOE,  :
                    Defendants.        :
------------------------------------------------------------x

Briccetti, J.:

This case arises from an electrical fire occurring at Sing Sing Correctional Facility ("Sing

Sing") in the early morning hours of April 18, 2011. Sing Sing is operated by the New York

State Department of Corrections and Community Supervision ("DOCCS"). Plaintiffs, fourteen

current and former Sing Sing inmates, bring civil rights claims pursuant to 42 U.S.C. § 1983,

alleging defendants, all of whom hold or held positions at DOCCS or Sing Sing, violated

plaintiffs' Eighth Amendment and due process rights. Specifically, plaintiffs allege defendants

were deliberately indifferent to (i) constitutionally inadequate fire safety conditions before the

fire; (ii) plaintiffs' safety during the fire; and (iii) plaintiffs' serious medical needs after the fire.

1

Plaintiffs seek damages for these alleged violations, as well as injunctive relief to remedy the constitutionally inadequate fire safety conditions they claim persist at Sing Sing to this day.

Now pending is a motion to dismiss plaintiffs' Second Consolidated Amended Complaint ("SCAC") (Doc. #51) pursuant to Rule 12(b)(6), which was made on behalf of all defendants except defendant Candice P. Sumpter.[1]  (Doc. #62).

For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.    Parties

Plaintiffs Felix Garcia, Philip Caldarola, Eleggua Osun Elufe, Wayne Norris, James Jameson, Elmer Ortiz, Amaury Bonilla, Ercrey Grangier, Kevin Williams, Malumba Kazigo, Brandon Holmes, Rolando Coronado, Paul Thompson, and Lamonte Johnson were all inmates at Sing Sing on April 18, 2011.  All but Caldarola and Thompson remain incarcerated there.

According to the SCAC, defendants occupied the following positions at Sing Sing at all times referred to in the SCAC, including April 18, 2011, unless otherwise noted:

Brian Fischer was the Commissioner of DOCCS, which operates Sing Sing.

Philip Heath was Sing Sing's superintendent on April 18, 2011, while Michael Capra is the current superintendent.

William F. Keyser Jr. was the deputy superintendent of security.

Kevin Winship was the deputy superintendent of administration.

Defendants Fischer, Capra, Keyser Jr., and Winship are alleged to be responsible for the "emergency response and evacuation plans" at Sing Sing to this day.  (SCAC ¶¶ 27, 29-31).

---

[1]     Defendant Sumpter has answered the SCAC.  (Doc. #67).

Noel F. Morris was the fire and safety officer.

Emil Mejia, Anthony M. Theriault,[2] Valerie Colon, Richard A. Moss, Sheldon Welsh, Candice P. Sumpter, Peter Mendez, Kevin M. Jackson, and Daniel Hausrath were corrections officers of varying rank and responsibilities.  Other than as to defendant Sumpter (SCAC ¶ 84), who did not move to dismiss, the SCAC makes no individual factual allegations about any of these defendants besides alleging each was "present at Sing Sing on April 18, 2011 and personally participated in the events at issue."  (Id. ¶¶ 33-37, 39-41).

Maryann Genovese was the Medical Director.  Barbara Furco was the Nurse Administrator.  "Dr. Williams" was a physician at the prison.  The SCAC also brings claims against an unspecified number of "Nurses Doe" present at Sing Sing on and after April 18, 2011.

II.  Factual Allegations

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the SCAC and draws all reasonable inferences in plaintiffs' favor.[3]

A.  Before the Fire

Plaintiffs claim fires have occurred at Sing Sing prior to April 18, 2011.  Notably, however, the SCAC does not indicate whether these previous fires disabled Sing Sing's electrical service as did the April 18 fire.  Nor does the SCAC allege facts suggesting these fires highlighted any particular need for improved fire safety procedures before that date.

---

[2]   The Court has been advised that Theriault died on or about November 26, 2015.  (Doc. #74).  For unrelated reasons, as explained below, all claims against him are dismissed pursuant to Rule 12(b)(6).

[3]   Defendants' brief cites to complaints filed by individual plaintiffs prior to the filing of the SCAC.  (See, e.g., Defs.' Br. at 2-3).  Because the SCAC replaced the individual complaints, for the purposes of this motion, the Court considers only the facts alleged in the SCAC and the exhibit attached thereto.

The SCAC alleges that, prior to April 18, 2011, defendants failed to establish or implement a fire safety plan, failed to prepare the inmates for a fire emergency, and failed to establish or implement an inmate health evaluation plan to assess fire-related injuries. Specifically, plaintiffs point to a lack of regular fire drills and the fact that defendant Morris (the fire and safety officer) does not speak to inmates at orientation.

The SCAC also alleges defendants knew there was asbestos and lead paint in Sing Sing before April 18, 2011, and plaintiffs were forced to inhale these substances during the fire. The SCAC does not allege any facts indicating which defendants knew about these substances or how they knew.

B.     The Fire

At approximately 1:58 a.m. on April 18, 2011, an electrical fire occurred in the basement of Sing Sing's Housing Block C. Thick, black smoke filled Housing Block A, where all the plaintiffs were housed. The fire also disabled Housing Block A's electricity, which Sing Sing's emergency generator was unable to restore. Plaintiffs allege the generator did not work because of Sing Sing's failure to maintain it properly.

Without electricity, Housing Block A was in complete darkness, its emergency public address system was disabled, and the cells could only be opened manually, with a special key, one cell at a time. Plaintiffs heard no smoke detectors or fire alarms, and prison staff made no public announcements to alert the inmates to the fire or address evacuation procedures.

Defendants (the SCAC does not specify which ones) allegedly became aware of the fire at about 2:00 a.m., but did not contact the local fire department until 3:17 a.m. At 4:00 a.m., unspecified defendants began opening the cells in Housing Block A and evacuating the inmates, a process that took over two hours. The SCAC alleges defendant Sumpter and other unspecified

4

defendants fled their posts rather than conduct an evacuation.  The SCAC claims defendants

would not have evacuated Housing Block A if the local fire department had not ordered them to

do so.

The SCAC does not explicitly indicate which defendants made the decision to begin

evacuating Housing Block A at 4:00 a.m., but does allege Superintendent Heath "was present at

the facility and directed the DOCCS response to the events at issue," and fire and safety officer

Morris "was present at Sing Sing and responsible for . . . the DOCCS response to the electrical

fire at issue."  (SCAC ¶¶ 28, 32).

Once released from their cells, plaintiffs and other inmates had to evacuate Housing

Block A by running through dark, smoky hallways and stairwells, which caused some inmates to

fall.  It is unclear whether any plaintiffs fell as well.

Plaintiffs Bonilla, Caldarola, Coronado, Grangier, Elufe, Johnson, Ortiz, Thompson, and

Williams were sent to the gymnasium in Housing Block A, while plaintiffs Garcia, Holmes,

Jameson, Kazigo, and Norris were sent to the keeplock recreation pen.  Both locations were dark

and filled with smoke.  The SCAC alleges unspecified defendant corrections officers stayed

outside both locations rather than supervise the inmates, and no inmates were searched for

weapons before being admitted.  Plaintiffs and the other inmates were kept in these locations

until daylight, when they were returned to their cells.

While in the gymnasium, plaintiff Ortiz was assaulted by another inmate.  No other

plaintiffs were assaulted.

C.    After the Fire

The SCAC alleges that in the hours and days following the fire, unspecified defendant

medical personnel denied plaintiffs adequate medical care for smoke inhalation, other injuries,

and psychological trauma.

The SCAC lists the following injuries suffered by at least one plaintiff as a result of smoke inhalation or other fire-related causes: anxiety; black discharge from sinuses; blackouts; blurred vision; chest pain; Chronic Obstructive Pulmonary Disease ("COPD");[4] congestion; coughing; difficulty breathing or shortness of breath; difficulty sleeping; diminished appetite; dizziness; ear pain; elevated blood pressure; eye irritation; fatigue; headaches; light-headedness; mental anguish; mood changes; nausea; nightmares; panic attacks resulting from airflow obstruction; pulmonary pain; right frontal sinusitis;[5] runny nose; skin irritation; stomach pain; vomiting; watery eyes; weakness; wheezing; worsened asthma; and worsened seasonal allergies. (SCAC ¶¶ 149-162).  Plaintiff Thompson also suffered a back injury from falling in the course of the evacuation, which required "anti-inflammatory medication and multiple months of physical therapy."  (Id. ¶ 161).  Plaintiff Ortiz suffered a bruised head and bruised ribs from being assaulted in the gymnasium.  The SCAC alleges these injuries were not appropriately treated by Sing Sing's medical staff.

Plaintiffs seek monetary damages for the injuries they suffered as a result of the fire and the subsequent alleged failure to treat these injuries.

The SCAC also alleges nothing has been done to address the fire safety failures brought to light by the April 18, 2011, fire.  Specifically, defendants have not addressed the problems with "Sing Sing's electrical equipment, public address system, cell doors, ventilation system, [] windows, and the hazardous materials present at the facility."  (SCAC ¶ 147).  Plaintiffs seek injunctive relief to force defendants to do so.

---

[4]     Suffered by plaintiff Coronado.

[5]     Suffered by plaintiff Johnson.

III.    Procedural History

This case began as fourteen individual pro se actions, each with its own individual complaint filed in 2013 and 2014.[6]  The Court accepted them all as related cases.  On May 28, 2014, the Court issued an order granting limited-purpose pro bono counsel to represent all plaintiffs through pre-trial proceedings except defending a motion for summary judgment.  (Doc. #13).

On November 18, 2014, plaintiffs' counsel filed one Consolidated Amended Complaint (Doc. #42) setting forth all plaintiffs' various claims.  On February 19, 2015, plaintiffs filed the SCAC that is the subject of this motion to dismiss.  (Doc. #51).  The SCAC purports to encompass all claims by all plaintiffs against all defendants in the fourteen related cases.

Defendants, excluding defendant Sumpter, move to dismiss the SCAC on the grounds that (i) it fails to allege the personal involvement of any defendant; (ii) it fails to allege any conduct arising to a constitutional claim; and (iii) defendants are entitled to qualified immunity.

**DISCUSSION**

I.    Legal Standards

    A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6]    The docket numbers are 13 CV 8196; 14 CV 972; 14 CV 1319; 14 CV 1320; 14 CV 1447; 14 CV 1726; 14 CV 1766; 14 CV 1864; 14 CV 2068; 14 CV 2079; 14 CV 2500; 14 CV 3217; 14 CV 4963; 14 CV 5738.

statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; accord Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

B.     Prisoner Eighth Amendment Violations

"There are three basic theories pursuant to which inmates customarily bring Eighth Amendment claims: (1) denial of adequate medical care; (2) unconstitutional conditions of confinement unrelated to medical care; and (3) failure to protect."  Randle v. Alexander, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013).  All three of these theories are relevant to this case.  No matter the theory, however, an Eighth Amendment claim must satisfy both an objective and a subjective component.  That is, the deprivation of rights must be "sufficiently serious" and the defendant prison official must have acted with "'deliberate indifference' to the health and safety of inmates."  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

1.    Inadequate Medical Care

The Eighth Amendment requires prisons to provide constitutionally adequate medical care.  In cases alleging inadequate care, the objective component requires the medical condition itself to be sufficiently serious.  A condition is sufficiently serious if it may cause "death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorsczyk, 134 F.3d 104, 108 (2d Cir. 1998)), or if "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain."  Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"  Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006) (quoting Chance v. Armstrong, 143 F.3d at 702).

To satisfy the subjective component, a plaintiff must allege the defendant had a mental state akin to recklessness, which "requires that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result."  Salahuddin v. Goord, 467 F.3d at 280 (citing Farmer v. Brennan, 511 U.S. at 836-37).  A plaintiff must allege "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Farmer v. Brennan, 511 U.S. at 835.

2.    Conditions of Confinement

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation" as well.  Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (citing Farmer v.

Brennan, 511 U.S. at 828).  To satisfy the objective component, the conditions of confinement must be bad enough to deny the prisoner "the minimal civilized measure of life's necessities," id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), such as "food, clothing, shelter . . . and reasonable safety."  Id. (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).  This may include "conditions that 'pose an unreasonable risk of serious damage to [prisoners'] future health.'"  Id. (quoting Helling v. McKinney, 509 U.S. at 35).

To satisfy the subjective component, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."  Phelps v. Kapnolas, 308 F.3d at 185-86 (quoting Farmer v. Brennan, 511 U.S. at 837).

Prison fire safety conditions are usually analyzed as "conditions of confinement" claims. See, e.g., Candelaria v. Coughlin, 1996 WL 88555, at *10 (S.D.N.Y. Mar. 1, 1996).  The Eighth Amendment requires prisons to implement fire safety protections that "do[] not expose [prisoners] to an unreasonable risk of serious damage to their future health."  See Benjamin v. Kerik, 1998 WL 799161, at *5 (S.D.N.Y. Nov. 13, 1998) (citing Helling v. McKinney, 509 U.S. at 33); accord Candelaria v. Coughlin, 1996 WL 88555, at *10 ("Defendants no doubt have a duty to provide adequate fire safety for the inmates in [a prison].").

3.      Failure to Protect

The Eighth Amendment also "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. at 832-33).  The objective component requires a plaintiff to "demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm."  Id.  The subjective component requires the defendant prison official to have knowledge of that risk and yet "fail[] to take reasonable measures to abate the harm."  Id.

This Eighth Amendment right is implicated when a prison official fails to prevent an inmate from being attacked by another, despite knowing the inmate was at risk.  See id.

    4.    Personal Involvement

    As with any Section 1983 claim, a plaintiff must allege defendants' personal involvement in the claimed violation of his Eighth Amendment rights.  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).  To do so, plaintiff must allege defendants (i) participated directly in the alleged constitutional violation; (ii) were made aware of the wrongs and failed to remedy them; (iii) created or allowed a policy or custom under which unconstitutional practices occurred; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to his rights by failing to act on information indicating unconstitutional acts were occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[7]

II.    Inadequate Fire Safety Conditions Before the Fire

    Plaintiffs claim defendants violated their Eighth Amendment rights by failing to establish or implement fire safety and evacuation plans before the April 18, 2011, fire, thereby exposing plaintiffs to unreasonably dangerous conditions.  Additionally, plaintiffs claim there was asbestos and lead paint present in Sing Sing before the fire broke out, to which they were exposed when the fire began to burn it.

    This claim fails.  Assuming, without deciding, that plaintiffs have met the objective component of a conditions of confinement claim, this claim fails the subjective component.

    "[W]here a particular state of mind is a necessary element of a claim, [a party's] pleading

---

[7]    The Second Circuit has noted, without deciding, that the five types of liability articulated in Colon v. Coughlin may not all have survived the Supreme Court's holding in Ashcroft v. Iqbal.  See Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012).  The Court need not decide this issue because, as explained further below, the only theory of liability applicable to any defendant in this case is direct participation, which unquestionably survived Iqbal.

of that state of mind must be plausible and supported by factual allegations." Biro v. Conde

Nast, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013) (citing Ashcroft v. Iqbal, 556 U.S. at 686-87).

Allegations that Section 1983 defendants "acted with . . . knowing . . . and/or reckless

indifference to the plaintiff's constitutional rights" are "conclusory" and "not entitled to the

presumption of truth." D.S. v. City of Peekskill, 581 F. App'x 65, 66-67 (2d Cir. 2014)

(summary order).

Here, the SCAC fails to plead facts showing any defendant knew about and ignored risks

created by any deficiencies in Sing Sing's fire safety and evacuation plans before April 18, 2011.

There are no allegations any defendant knew how dangerous it would be to evacuate Housing

Block A without electricity, knew the backup generator would not work, or had any idea the

prisoners could be exposed to toxic substances if a fire occurred.  Though defendants possibly

could have been more perspicacious in anticipating the potential risks in the event of a fire,

nothing in the SCAC suggests they knew these risks and yet were deliberately indifferent.

Plaintiffs argue defendants were on notice of these risks "as a result of other fires at Sing

Sing." (Pls.' Br. at 14).  This is unpersuasive.  Though the SCAC alleges previous fires

occurred, it contains no explanation of how, if at all, these previous fires would have alerted

defendants to any deficiency in the fire safety conditions at Sing Sing.

All of plaintiffs' other allegations about defendants' state of mind are conclusory and

therefore not entitled to the presumption of truth.  Therefore, any claims based on defendants'

conduct before the April 18, 2011, fire are dismissed.

III.   Failure Timely to Evacuate Plaintiffs

On the morning of the fire, however, the SCAC does state a "conditions of confinement"

claim based on certain defendants' deliberate indifference to the risk of exposing plaintiffs to

heavy smoke for several hours.

To satisfy the objective component, the SCAC alleges plaintiffs were exposed to thick black smoke in Housing Block A for two hours before evacuation even began, and an additional two hours or more while the cells were evacuated one by one.  This is sufficient at the pleading stage for the Court to find plaintiffs were exposed to "conditions that 'pose an unreasonable risk of serious damage to [their] future health.'"  Phelps v. Kapnolas, 308 F.3d at 185 (quoting Helling v. McKinney, 509 U.S. at 35).  Indeed, the prolonged exposure to this smoke is alleged to have caused serious health conditions for at least two plaintiffs: plaintiff Coronado has developed COPD, and plaintiff Johnson has developed sinusitis.  See Hobson v. Fischer, 2011 WL 891314, at *5 (S.D.N.Y. Mar. 14, 2011) (COPD found sufficiently serious to support an Eighth Amendment claim at motion to dismiss stage); Denis v. N.Y.S. Dep't of Corr. Servs., 2006 WL 217926, at *18-19 (S.D.N.Y. Jan. 30, 2006) (chronic sinusitis found sufficiently serious at summary judgment stage).

This claim satisfies the subjective component as well.  According to the SCAC, the smoke condition was apparent at around 2:00 a.m., yet defendants did not call the fire department until 3:17 a.m. or begin evacuating plaintiffs until 4:00 a.m.  This could give rise to the inference that defendants knew plaintiffs were being exposed to unreasonably dangerous heavy smoke, yet deliberately chose not to alleviate this for two or more hours.  Additionally, the SCAC alleges plaintiffs were brought to other smoke-filled rooms—the keeplock and gymnasium—and thus exposed to more smoke until sunrise.  Taken together, the SCAC plausibly alleges deliberate indifference to an unreasonably dangerous condition of confinement.[8]

---

[8]     Defendants argue the SCAC does not plausibly allege deliberate indifference because

Finally, the SCAC alleges defendants Heath and Morris were directly involved in exposing plaintiffs to this condition.  The SCAC does not explicitly state which defendant or defendants made the decision not to evacuate plaintiffs until 4:00 a.m., or to direct them to other smoke-filled rooms.  However, it does allege Heath and Morris were present at Sing Sing during the fire and directed Sing Sing's response to it.  Although it is a close case, the Court finds this allegation sufficient to meet the personal involvement requirement.

However, the SCAC does not sufficiently allege personal involvement by any other defendant.  For all defendants besides Heath and Morris, the SCAC either alleges no decision-making authority with respect to evacuating Housing Block A, or alleges merely that particular defendants were "responsible" for evacuation or emergency protocol in general.  Likewise, there are no allegations to suggest any defendant created a policy under which defendants Heath or Morris purposely delayed the evacuation, was grossly negligent in supervising defendants Heath or Morris, or knew Heath or Morris were violating plaintiffs' constitutional rights and did nothing to stop them.  Therefore, none of the <u>Colon</u> factors are met for any other defendant.

For these reasons, claims based on the way Housing Block A was evacuated on April 18, 2011, are dismissed as to all defendants except Heath and Morris.

IV.    <u>Failure to Protect</u>

The SCAC alleges plaintiff Ortiz was assaulted in the gymnasium because of defendants'

---

defendants were reasonable to evacuate Housing Block C first, where the fire was located, and under those circumstances, defendants could not have evacuated Housing Block A any more quickly than they did.  (Defs.' Br. at 12-13).  This is not a proper argument for a motion to dismiss because it asks the Court to consider facts outside the SCAC and interpret them favorably to defendants, the moving party.

14

failure to protect him from other inmates.[9]

This claim fails because the SCAC fails to allege personal involvement by any defendant. The SCAC alleges only that "Defendant Correction Officers remained outside the gymnasium, leaving maximum security inmates crowded in the dark without supervision while fighting broke out, with reckless and deliberate indifference to Plaintiffs' safety." (SCAC ¶ 120). "Defendant Correction Officers" is defined as all defendants except Genovese, Furco, Williams, and Nurses Doe. (Id. ¶ 42). It is implausible that all of these defendants stood outside the gymnasium and failed to protect plaintiff Ortiz from other inmates. Indeed, according to the SCAC, some "Defendant Correction Officers" were not even present at Sing Sing on April 18, 2011.[10] Nor does the SCAC allege any facts indicating any defendant created a policy under which a corrections officer failed to protect plaintiff Ortiz, was grossly negligent in supervising such an officer, or knew plaintiff Ortiz's rights were being violated and did nothing.

Therefore, the Court need not decide whether the failure to protect plaintiff Ortiz satisfies either the objective or subjective component of the test for Eighth Amendment violations.

V.    Inadequate Medical Care

Plaintiffs' claims based on constitutionally inadequate medical care also fail.

First, almost all of the alleged medical conditions at issue are not serious enough to satisfy the objective component of the test. See supra Background Part II.C. With the possible

---

[9]    The SCAC does not specify that only plaintiff Ortiz brings this claim. But because no other plaintiffs are alleged to have been assaulted, the Court dismisses all failure to protect claims brought by other plaintiffs.

[10]    For this reason, plaintiffs' reliance on Messina v. Mazzeo is misplaced. (Pls.' Br. at 9-10). In that case, referring to defendants as "defendant Police Officers" in the complaint still alleged personal involvement by individual officers because the complaint alleged all individual police officers had used excessive force together. 854 F. Supp. 116, 125-26 (E.D.N.Y. 1994). Here, by contrast, the SCAC cannot plausibly allege all "Defendant Correction Officers" participated in every action attributed to the group.

exceptions of plaintiff Coronado's COPD, plaintiff Johnson's sinusitis, and plaintiff Thompson's back injury, none of plaintiffs' injuries as described in the SCAC is capable of causing "death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d at 403 (quoting Hemmings v. Gorsczyk, 134 F.3d at 108), or "could result in further significant injury or the unnecessary and wanton infliction of pain" if not treated.  Harrison v. Barkley, 219 F.3d at 136 (quoting Chance v. Armstrong, 143 F.3d at 702).  Thus, the failure to treat these alleged injuries does not rise to an Eighth Amendment violation.

Second, assuming for the sake of this motion that COPD, sinusitis, and Thompson's back injury were all serious enough to satisfy the objective component, the SCAC also does not allege a violation of the subjective component because it contains no facts to show any defendant knew how serious these conditions were.  After the fire, plaintiff Coronado complained to the medical staff only of "difficulty breathing" (SCAC ¶ 128.E) and was not even diagnosed with COPD until 2013.  (Id. ¶ 160).  Plaintiff Thompson complained only of "a back injury."  (Id. ¶ 128.H).  There are no allegations at all that plaintiff Johnson alerted anyone about the symptoms of his sinusitis, or if he even displayed any symptoms immediately after the fire.  None of these allegations is sufficient to suggest any defendant knew of the serious nature of plaintiffs' conditions, yet disregarded the risks.

Therefore, all of plaintiffs' claims based on constitutionally inadequate medical care are dismissed.

VI.     Injunctive Relief

The SCAC claims the problems with Sing Sing's fire safety conditions and evacuation protocols persist to this day.  Plaintiffs therefore bring a claim for injunctive relief to force defendants to provide constitutionally adequate safety conditions in Sing Sing.

Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3626(a).

Here, the SCAC plausibly pleads an ongoing Eighth Amendment violation with respect to fire safety and evacuation procedures.

Prison inmates have a constitutional right to adequate fire safety, so they are not exposed to an unreasonable risk of serious damage to their future health.  See Benjamin v. Kerik, 1998 WL 799161, at *5 (citing Helling v. McKinney, 509 U.S. at 33).  In prison fire safety cases, "not every deviation from ideally safe conditions constitutions a violation of the constitution," and "[t]here is no bright line separating an unreasonable danger from a reasonable one."  Coniglio v. Thomas, 657 F. Supp. 409, 414 (S.D.N.Y. 1987) (quoting Santana v. Collazo, 714 F.2d 1172, 1183 (1st Cir. 1983)).

Nevertheless, in finding that prisons have constitutionally inadequate fire safety, other courts in this district have pointed to several of the dangerous conditions plaintiffs allege here. See Benjamin v. Kerik, 1998 WL 799161, at *1 (malfunctioning fire alarms and a cell locking system that could cause "delay in opening the doors in case of an emergency"); Candelaria v. Coughlin, 1996 WL 88555, at *10 (no electronic cell locking system); Coniglio v. Thomas, 657 F. Supp. at 414 (prison lacked a "system of effective smoke management").

Moreover, plaintiffs' claim that the fire safety conditions and evacuation procedures at Sing Sing were unreasonably dangerous is supported by the alleged events of April 18, 2011. Because of the alleged deficiencies, it took over four hours to fully evacuate Housing Block A, and even after it was evacuated, plaintiffs were brought to other smoke-filled spaces.  This alleged mishandling of the evacuation exposed plaintiffs to prolonged smoke inhalation, which

damaged multiple plaintiffs' health.  According to plaintiffs, proper procedures, facility

maintenance, and training could have prevented this damage from happening, yet Sing Sing has

done nothing, and another fire could very well cause the same exact problems.

Given the difficulty of evaluating the reasonableness or unreasonableness of prison fire

safety conditions without the benefit of a fuller record, the Court finds at this early stage that the

SCAC plausibly alleges a sufficiently serious fire safety problem at Sing Sing.  Therefore, the

objective component is met.

The subjective component is also met.  Accepting the SCAC as true, the fire brought to

light several of Sing Sing's deficiencies with respect to fire safety.  Specifically, when the fire

disabled the electricity in Housing Block A, it prevented the use of the public address system,

caused complete darkness, and significantly delayed the process of opening the cell doors to

release the prisoners.  The windows and ventilation issues compounded this problem as the

smoke accumulated.  Moreover, the fire demonstrated the unreliability of the backup power

generator, which could not restore the electricity.  By virtue of this fire—not to mention this

lawsuit—it is plausible defendants are aware of the allegedly unconstitutionally dangerous fire

safety conditions in Sing Sing.  If, as the SCAC claims, defendants have declined to address

these problems, that is sufficient to establish a claim for "deliberate indifference."

However, this claim may be brought only against defendants Fischer, Capra, Keyser Jr.,

and Winship.  "Actions involving claims for prospective declaratory or injunctive relief are

permissible provided the official against whom the action is brought has a direct connection to,

or responsibility for, the alleged illegal action."  Davidson v. Scully, 148 F. Supp. 2d 249, 254

(S.D.N.Y. 2001) (quoting Marshall v. Switzer, 900 F. Supp. 604, 615 (N.D.N.Y. 1995)).  These

four defendants are the only ones the SCAC alleges are still responsible for "emergency response

and evacuation plans" at Sing Sing.  (SCAC ¶¶ 27, 29-31).  Therefore, the claim for injunctive relief is dismissed as to all other defendants.

To the extent plaintiffs seek an injunction based on constitutionally inadequate medical care, this claim is dismissed.  As explained above, defendants did not violate plaintiffs' Eighth Amendment right to adequate treatment on or following the April 18, 2011, fire because all but three injuries were not "sufficiently serious," and there are no allegations suggesting defendants continue to refuse treatment for plaintiff Coronado's COPD, plaintiff Johnson's sinusitis, or plaintiff Thompson's back injury.

VII.   Qualified Immunity

Based on the foregoing, the Court finds plaintiffs have alleged claims against defendants Heath and Morris for violating their right to constitutionally adequate conditions of confinement on April 18, 2011, and claims against defendants Fischer, Capra, Keyser Jr., and Winship for injunctive relief to remedy the ongoing constitutionally inadequate fire safety at Sing Sing. Defendants nonetheless contend they are entitled to qualified immunity, and thus the claims against them must be dismissed.[11]

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

---

[11]     Because defendants' motion is granted as to all other claims, the Court need not consider the applicability of qualified immunity to those claims.

the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

Defendants' alleged actions violated clearly established law.  On April 18, 2011, it was clearly established that prison officials had a duty to provide "reasonably safe" prison conditions. Phelps v. Kapnolas, 308 F.3d at 185 (quoting Helling v. McKinney, 509 U.S. at 32).  It was also clear this duty extended to fire safety.  See, e.g., Candelaria v. Coughlin, 1996 WL 88555, at *10 ("Defendants no doubt have a duty to provide adequate fire safety for the inmates in [a prison].").  Finally, it was clear prolonged exposure to smoke presented an "unreasonable risk of serious damage to [an inmate's] future health," potentially violating the Eighth Amendment. Helling v. McKinney, 509 U.S. at 35.  Therefore, defendants' argument that they did not violate clearly established law fails.

Moreover, without a fuller record, the Court cannot determine whether defendants were objectively reasonable in believing their actions were lawful.  For example, at this stage, the Court cannot determine whether it was reasonable for defendants to believe the evacuation did not violate the Eighth Amendment.  Therefore, qualified immunity is denied without prejudice to being reasserted at a later stage of the proceedings.

## CONCLUSION

Defendants' motion to dismiss is DENIED as to claims against defendants Heath and Morris based on the failure to evacuate plaintiffs from Housing Block A properly or in a timely manner on April 18, 2011.

Defendants' motion is also DENIED as to claims against defendants Fischer, Capra, Keyser Jr., and Winship for injunctive relief concerning fire safety and emergency evacuation protocol at Sing Sing.

Defendants' motion to dismiss is GRANTED as to all other claims against these six defendants, and as to all claims against defendants Mejia, Theriault, Colon, Moss, Walsh, Mendez, Jackson, Hausrath, Genovese, Furco, "Dr. Williams," and Nurses Doe.

The Clerk is directed to terminate from this action defendants Emil Mejia, Anthony M. Theriault, Valerie Colon, Richard A. Moss, Sheldon Walsh, Peter Mendez, Kevin M. Jackson, Daniel Hausrath, Maryann Genovese, Barbara Furco, "Dr. Williams," and Nurses Doe.

The Clerk is further directed to terminate the motion.  (Doc. #62).

Dated:  January 22, 2016
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge